| | |
|---|---|
| STATE OF MINNESOTA | DISTRICT COURT |
| COUNTY OF HENNEPIN | FOURTH JUDICIAL DISTRICT |
| | Case Type: EMPLOYMENT |

Court File No.:

Lee Edwards, an individual

          Plaintiff,

v.

City of Minneapolis, Patrick King, personally, individually and in his official capacity, John Doe and Jane Roe, personally, individually and in their official capacities as Minneapolis Police Officers, and Tim Dolan, Minneapolis Chief of Police, personally, individually and in his official capacity,

          Defendants.

**COMPLAINT AND JURY DEMAND**

---

Now comes the Plaintiff, Lee Edwards, and for his Complaint against Defendants states and alleges as follows:

## INTRODUCTION

1.     Plaintiff Lee Edwards brings this complaint seeking damages and other relief against Defendants for violations of his statutory rights and civil and constitutional rights under both federal and state constitutions, violations of federal and state statutes, including 42 United States Code Section 1981, 1983, 1985 and 1988, and for common law and/or statutory whistleblower claims as herein enumerated.

1

2. The incidents giving rise to Plaintiff Edwards' claims took place during Plaintiff's tenure as Minneapolis Police Officer.

3. During his tenure with MPD, Plaintiff held the rank of MPD Inspector. Plaintiff is a veteran of decades with the MPD.

## PARTIES

4. Plaintiff is a citizen of the United States and of the State of Minnesota and resides within the metropolitan area. Plaintiff is an African-American male and therefore a member of a protected class.

5. On or about August 7, 2007, Plaintiff was demoted in rank from Inspector to Lieutenant based on his good faith reports of discriminatory conduct and opposition to that conduct and because of alleged and unsupported and unfounded accusations of corruption and misconduct by superiors. Plaintiff ultimately suffered discipline on January 16, 2009 that he grieved.

6. Plaintiff made reports of racially discriminatory and racially hostile acts, statements, and comments by fellow MPD officers which reports are protected reports under Minnesota and federal law. Edwards was a citizen of the United States and natural person residing in the State of Minnesota.

7. Defendant City of Minneapolis is a political entity and person under 42 U.S.C. § 1983 and the employer of the Defendant Dolan and other police officers and is sued pursuant to Minnesota Statutes Section 466.01, et seq. The appropriate claims are also based on the doctrine of respondeat superior against Defendant City of Minneapolis as the employer of Defendant officers. The City is also a direct defendant.

8. Defendant Patrick King, is a Minneapolis police officer that formally served as a member

of the Violent Offender Task Force (VOTF). Defendant Timothy Dolan is the Minneapolis Police Chief. Dolan, allegedly, has the duty and responsibility of supervising, training and disciplining Minneapolis Police officers, including defendant officers herein.

9. All Defendant police officers were at the time and place of the incident working as on-duty Minneapolis Police officers and/or acting within the scope and course of their official duties and employment as officers with the City of Minneapolis Police Department. All were acting under color of state law.

10. The facts herein alleged related to the investigation that occurred of Plaintiff Edwards' by MPD administration and the Minneapolis Police Department's Violent Offender Task Force ("VOTF").

## FACTS

11. Patrick King was a member of VOTF involved in the investigation of alleged police corruption in 2007 and thereafter. VOTF members were actively involved in the arrest and investigation of alleged gang member Taylor Trump (aka "Valachi"). During that investigation, Taylor Trump ("Trump") proffered to VOTF members and claimed to identify at least six (6) present Minneapolis police officers that were allegedly engaged in illegal activity on behalf of Trump. One of them was purportedly Plaintiff Edwards.

12. This investigation ultimately led to the indictment and prosecution of Officer Mike Roberts of MPD on federal charges. Officer Roberts ultimately pled guilty to certain charges after commencement of his trial. Trump also sought to implicate other officers, including Plaintiff Lee Edwards; however, no prosecution of Plaintiff Edwards eventuated.

13. Trump also named Lt. Richard (Rick) Thomas (white); Sgt. Kevin Pulphus (African-American); Officer Tony Adams (African-American); and, Officer Craig Stoddard (White). Of the six officers named to authorities in Trump's in-custody interview, two were Caucasian and four are African-American. Plaintiff Edwards was one of several African-American officers who had been outspoken about the failure of Dolan and MPD to promote and advance African-American officers of rank and experience.

14. Upon information and belief, several VOTF officers expressed doubts about the credibility and other reservations about the informant's credibility when asked their opinions about these officers. These concerns regarding credibility were heightened by the conflicting details in Trump's "back story" regarding his familiarity and acquaintance with Plaintiff Edwards and other officers.

15. Among the alleged concerns were the interrogation methods employed by both F.B.I. and VOTF members. For instance, they declined to tape record the interview and/or use a photo lineup procedure to confirm Trump's purported identification of the accused officers. Moreover, despite detailed questioning by F.B.I. Agent Gene Laplace as to the difference between Officer Tony Adams (African-American) and Sgt. Charles (Charlie) Adams, Trump was plainly (later) unclear as to the distinctive difference in identity between the Adams brothers who are both African-Americans.

16. At one point in his questioning, Trump referred to one officer as the "Mayor's driver". He also misidentified the first name of Officer Stoddard—calling him "Mike" Stoddard instead of Craig—his given name.

17. Following Trump's arrest and initial interrogation, on further questioning of Trump on July 25th, 2007, certain further questions arose. Upon information and belief, Trump changed his

story in significant ways.

18. Trump was now changing his story and claiming that Officer Tony Adams was not a corrupt officer—rather it was his brother, Sgt. Charlie Adams with whom he had allegedly supplied prostitutes in return for illicit favors. Certain VOTF members—aware of the significant difference in appearance between the brothers—made F.B.I. and VOTF officers aware of this fact. Upon information and belief, Defendant Dolan was made aware of these facts.

19. On information and belief, on the morning of July 25, 2007, then serving VOTF commander sat in on an interview at an F.B.I. controlled location of Taylor Trump. Present at that interview were Trump; FBI agents LaPlace, Summerville and an F.B.I. analyst; and VOTF members Peterson and Mike Keefe. Trump was initially asked about drug trafficking and gang issues. Keefe then raised the issue of the MPD officers Trump alleged had committed misconduct or criminal activity.

20. Trump at this point changed his story regarding any involvement of Officer Stoddard—instead identifying Officer Stoddard's former partner, Officer Doran. Ironically, Doran was a member of VOTF and Trump had never identified Doran as a corrupt officer on the night of Trump's arrest. Nevertheless, he now contended that Officer Doran had received from him (Trump) "thousands of dollars". Moreover, upon further questioning by Agent LaPlace, Trump clearly had physical descriptions confused for Doran and Stoddard.

21. Trump then went to claim that he had paid Sgt. Rick Thomas funds over the past years for favors. Additionally, at the July 25, 2007 session, Trump now added the names of two new officers, Officer Mentor and Lt. Lindback. And while Trump denied ever giving them any funds, he nevertheless claimed to know they were "corrupt." Trump then identified them by their nicknames of Red Dog and Bat Man. At this point, there was apparently an effort by F.B.I.

agent LaPlace to terminate this interview. Prior to the end of the interview, Trump further alleged that Sgt. Charlie Adams had improperly permitted Trump to escape from an active warrant with drugs (cocaine) in his possession and had also taken a firearm from Trump. The July 25 interview was significantly different than the initial statement of Trump on the night of his arrest during which he stated that no favors were exchanged between himself and Charlie Adams.

22.  On August 9, 2007, Trump was involved in the operation that led to the indictment of Officer Mike Roberts (an African–American) and his subsequent conviction. Upon information and belief, Defendant King was instrumental in seeking to investigate Plaintiff Edwards. Plaintiff Edwards was an ongoing target of investigation by the VOTF unit at the direction and with the knowledge of Defendant Dolan and with the full participation of Defendant King. Upon information and belief, no white officers were targeted for intense investigation by VOTF.

23.  Subsequently, during the federal proceedings against MPD officer Mike Roberts and prior to the trial of the matter, two subpoenas from attorney F.C. Tyler's office were issued to MPD officer Mike Keefe. The first subpoena was dated 4/22/09 and the second subpoena was dated 4/30/09. The second subpoena was issued as a duces tecum subpoena demanding all notes, records, recordings regarding informant/witness Taylor Trump. It also sought all notes, memoranda and recordings in connection with Michael Roberts from January 2007 to present.

24.  Upon information and belief, Plaintiff alleges that Defendant Dolan was fearful of Keefe's potential testimony and sought to deter him from testifying in a court or tribunal.

25.  Additionally, Plaintiff Edwards and four other African-American officers brought a federal lawsuit in the Minnesota District alleging racial discrimination in terms and conditions of employment, including promotion, naming Defendant Dolan and the City of Minneapolis in

2007.

26. Subsequently, Defendant Dolan sustained an Internal Affairs Unit complaint against Edwards. This complaint sustaining was on information and belief an effort to chill, deter or retaliate against for his expressed views regarding racial discrimination and his reports and opposition to prohibited discriminatory practices by and through using the Trump operation and MPD internal affairs investigative procedures against Plaintiff Edwards. This discipline came despite the Trump operation not developing any criminal enforcement action against Plaintiff Edwards. Further, upon information and belief, many of the actions of Defendants have been concealed by virtue of secrecy of investigative techniques directed at Plaintiff Edwards.

27. Plaintiff alleges that this plan is intended to create a framework for his potential demotion, suspension, or discharge by Defendants and possible criminal prosecution. Moreover, during the foregoing sequence of events, Edwards repeatedly expressed his opposition to racially discriminatory actions. Edwards reported and opposed racially discriminatory treatment of him and other protected class MPD officers by superiors. Edwards suffered hostility and reprisal based on these actions to oppose discriminatory conduct.

## CAUSES OF ACTION

### I.

### WHISTLEBLOWER CLAIMS

27. Plaintiff restates and realleges each and every allegation and paragraph of this Complaint as if fully set forth herein.

28. The actions of Defendant Minneapolis and Dolan, including the demotion of Plaintiff Edwards, were all based on Plaintiff's good faith reports of discriminatory treatment and his

opposition to discriminatory practices based on race.

29. Further, Defendants, including Minneapolis and Dolan, took immediate and causally-connected action to threaten, chill and deter Plaintiff from testifying about or opposing the discriminatory conduct which was a matter of public concern and interest before a court or other tribunal.

30. Such actions were illegal and constituted reprisal in violation of Minnesota law, including actions which demoted, suspended, harassed, and otherwise unfairly sanctioned Plaintiff as an employee and police officer with the City of Minneapolis. See Minn. Statutes Section 181.932.

31. As a result of these actions, Plaintiff has suffered emotional distress, humiliation, loss of reputation, lost income, lost overtime pay, loss of off-duty privileges, lost benefits, lost status, and faces potential further more serious discipline, resulting in damage to Plaintiff.

32. Wherefore, as a direct and proximate cause of the actions of Defendant officers, Plaintiff has suffered damages in an amount in excess of fifty thousand dollars ($50,000.00).

## II.

## MHRA REPRISAL

33. Plaintiff restates and realleges each and every allegation and paragraph of this Complaint as if fully set forth herein.

34. The actions of Defendants Minneapolis and Dolan, constituted an illegal an improper reprisal against Plaintiff Edwards for his good faith reporting of race-based violations of MPD policy, Minnesota law, and federal law, outlawing discrimination based on race, and the Fourteenth Amendment, prohibiting racially-selective prosecutions or racially-motivated law enforcement activities.

35. Edwards's actions and reports opposing such conduct were done in good faith.

36. Wherefore, as a direct and proximate cause of the actions of Defendants Minneapolis and Dolan, Plaintiff has suffered damages in an amount in excess of fifty thousand dollars ($50,000.00).

### III.

### INVASION OF PRIVACY

37. Plaintiff restates and realleges each and every allegation and paragraph of this Complaint as if fully set forth herein.

38. Defendants in their aggressive efforts to chill and deter Plaintiff from pursuing his rights, voicing his First Amendment protected concerns and opposing racially discriminatory practices, failed in telling the truth regarding investigative missteps, oversights, engaged in non-disclosures, committed or engaged in failures to disclose or consider exculpatory facts based on the inconsistent proffer of facts by informant/witness Trump, and engaged in a pattern of action to monitor Edwards's movements, phone calls, personal belongings and other activities under the guise of internal affairs or criminal investigative surveillance.

39. Plaintiff was and is entitled to privacy in his personal effects, personal and private activities. Plaintiff is also entitled to not be subjected to police-sponsored harassment based on a retaliatory motive unrelated to his official duties or the direct disciplinary requirements of the office of sworn police officer.

40. Upon information and belief, officers acting at Defendant Dolan's direction searched Edwards's personal possessions at the workplace, monitored non-law enforcement related movements, including monitoring Edwards' location.

41. This pattern of harassment unjustifiably invaded Edwards's privacy and sought to illegally and falsely invade upon his seclusion. Defendants did so maliciously and/or recklessly.

42. Wherefore, as a direct and proximate cause of the actions of Defendant officers, Plaintiff has suffered damages in an amount in excess of fifty thousand dollars ($50,000.00).

## IV.

## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

43. Plaintiff restates and realleges each and every allegation and paragraph of this Complaint as if fully set forth herein.

44. The actions of Defendants were malicious, unjustified and unreasonable and so outrageous as to be non-endurable in a civilized society. Further such actions invaded and violated Plaintiff's liberty interests and rights. Such actions were unjustified and were committed with malice for Edwards.

45. As a result of these outrageous actions, Plaintiff was caused severe emotional and mental distress, resulting in harm and injury to Plaintiff.

46. Wherefore, as a direct and proximate cause of the actions of Defendant officers, Plaintiff has suffered damages in an amount in excess of fifty thousand dollars ($50,000.00).

47. Wherefore, as a direct and proximate cause of the actions of Defendant officers, Plaintiff has suffered damages in an amount in excess of fifty thousand dollars ($50,000.00).

## V.

## 42 USC § 1983

## DUE PROCESS VIOLATIONS

48. Plaintiff restates and realleges each and every allegation and paragraph of this Complaint as if fully set forth herein.

49. The actions of Defendants, including Dolan Officer, were conducted under color of law

and while acting within the scope of their authority as Minneapolis Police officers.

50. Such actions intentionally and recklessly constituted "constitutional torts," including violating and depriving Lee Edwards of his right to due process of law, all in violation of rights under the Fifth and Fourteenth Amendments to the United States Constitution and Title 42 United States Code Section 1983. Specifically, Edwards is entitled to carry out his duties as a police officer free from the threat of ongoing official intimidation, harassment, or the threat of internal or external prosecution in retaliation for said adherence to duty.

51. Further, the actions of the Defendant Dolan were inherently shocking to the conscience. See *Rochin v. California*, 342 U.S. 165, 96 L. Ed. 183, 72 S. Ct. 205 (1952).

52. As a result of these outrageous actions, Plaintiff was caused severe harm, including the loss of constitutional rights and liberties, serious, temporary and/or permanent mental and emotional injury and other emotional and mental distress, resulting in harm and injury to Plaintiff.

53. Wherefore, as a direct and proximate cause of the actions of Defendant officers, Plaintiff has suffered damages in an amount in excess of fifty thousand dollars ($50,000.00).

## VI.

## 42 U.S.C. § 1983

### MONELL CLAIM

54. Plaintiff restates and realleges each and every allegation and paragraph of this Complaint as if fully set forth herein.

55. The pattern or practice of illegal and condoned police misconduct is tacitly or overtly sanctioned by the conduct of Defendants Dolan and the City of Minneapolis.

56. Thus, such behavior is carried out pursuant to a policy, procedure or custom, whether

formal or informal, which violates constitutional rights of persons situated such as Plaintiff.

57. As a result of these illegal and unconstitutional policies, procedures or customs, Plaintiff was caused severe harm, including the loss of constitutional rights and liberties, physical injury and other emotional and mental distress, resulting in harm and injury to Plaintiff.

58. Wherefore, as a direct and proximate cause of the actions of Defendant officers, Plaintiff has suffered damages in an amount in excess of fifty thousand dollars ($50,000.00).

## VII.

## 42U.S.C. § 1985

59. Plaintiff restates and realleges each and every allegation and paragraph of this Complaint as if fully set forth herein.

60. The actions of each police officer Defendant, the City of Minneapolis and Defendant Dolan in failing to prevent such a tacit agreement and conspiracy to violate rights under 42 USC §§ 1985 and 1983 constitutes a violation of Section 1985(3).

61. As a result of these illegal and unconstitutional policies, procedures or customs, Plaintiff suffered severe harm, including the loss of constitutional rights and liberties, physical injury and other emotional and mental distress, resulting in harm and injury to Plaintiff.

62. Wherefore, as a direct and proximate cause of the actions of Defendant officers, Plaintiff has suffered damages in an amount in excess of fifty thousand dollars ($50,000.00).

## VIII.

## 42U.S.C. § 1981/1983

### REPRISAL

63. Plaintiff restates and realleges each and every allegation and paragraph of this Complaint as if fully set forth herein.

64. The actions of Defendants Minneapolis and Dolan, constituted an illegal an improper reprisal against Plaintiff Edwards for his good faith reporting of and his opposition to race-based violations of MPD policy, Minnesota law, and federal law, outlawing discrimination based on race, including discrimination in the terms and conditions of employment; discrimination in hiring and promotion; and the creation of a racially hostile and oppressive work environment as prohibited by the Thirteenth and Fourteenth Amendments.

65. Edwards's actions and reports opposing such conduct were done in good faith.

66. Wherefore, as a direct and proximate cause of the actions of Defendants Minneapolis and Dolan, Plaintiff has suffered damages in an amount in excess of fifty thousand dollars ($50,000.00).

## IX.

### 42U.S.C. § 1981/1983

### REPRISAL THROUGH RACIALLY SELECTIVE LAW ENFORCEMENT

67. Plaintiff restates and realleges each and every allegation and paragraph of this Complaint as if fully set forth herein.

68. The actions of Defendants Minneapolis and Dolan, constituted an illegal an improper reprisal against Plaintiff Edwards for his good faith reporting of and his opposition to race-based violations of MPD policy, Minnesota law, and federal law, outlawing discrimination based on race, including discrimination in the terms and conditions of employment; discrimination in hiring and promotion; and the creation of a racially hostile and oppressive work environment as prohibited by the Thirteenth and Fourteenth Amendments by permitting a prohibited racially-selective prosecution or racially-motivated law enforcement activities in violation of Title 42 USC Sections 1981 and 1983.

69. Edwards's actions and reports opposing such conduct were done in good faith.

70. Wherefore, as a direct and proximate cause of the actions of Defendants Minneapolis and Dolan, Plaintiff has suffered damages in an amount in excess of fifty thousand dollars ($50,000.00).

## X.

## SECTION 1983 REPRISAL FOR ASSERTION OF FIRST AMENDMENT RIGHTS

71. Plaintiff restates and realleges each and every allegation and paragraph of this Complaint as if fully set forth herein.

72. Defendants in their aggressive efforts to chill and deter Plaintiff from pursuing his rights, voicing his First Amendment protected concerns and opposing racially discriminatory practices, failed in telling the truth regarding investigative missteps, oversights, engaged in non-disclosures, committed or engaged in failures to disclose or consider exculpatory facts based on the inconsistent proffer of facts by informant/witness Trump, and engaged in a pattern of action to monitor Edwards's movements, phone calls, personal belongings and other activities under the guise of internal affairs or criminal investigative surveillance.

73. Plaintiff was and is entitled to privacy in his personal effects, personal and private activities. Plaintiff is also entitled to not be subjected to police-sponsored harassment based on a retaliatory motive unrelated to his official duties or the direct disciplinary requirements of the office of sworn police officer.

74. Upon information and belief, officers acting at Defendant Dolan's direction searched Edwards's personal possessions at the workplace, monitored non-law enforcement related movements, including monitoring Edwards' location.

14

75.     This pattern of harassment unjustifiably invaded Edwards's privacy and sought to illegally and falsely invade upon his seclusion. Defendants did so maliciously and/or recklessly.

76. All of these actions were undertaken under color of law by Dolan and officers Doe and Roe acting at his direction.

77.     Wherefore, as a direct and proximate cause of the actions of Defendant officers, Plaintiff has suffered damages in an amount in excess of fifty thousand dollars ($50,000.00).

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff Lee Edwards prays for judgment and the following relief against each and every Defendant, jointly and severally.

A.   Reasonable damages in an amount in excess of Fifty Thousand Dollars;

B.   Injunctive and declaratory relief;

C.   Attorneys fees and expert costs under 42 USC § 1988;

D.   Any and all other relief available, including pre-verdict and post-verdict interest, costs, fees and disbursements; and

E. After motion, hearing, and Order, a claim and judgment for punitive damages.

F. Plaintiff demands a jury trial as to issues so triable.

G. All available statutory damages, including punitive damages pursuant to 42 United States Code Section 1983, following a motion and order.

Dated: 7/29/11

GOINS LAW OFFICES

Albert T. Goins, Sr., #126159
301 Fourth Avenue South
378 Grain Exchange Building
Minneapolis, MN 55415
(612) 339-3848 telephone
612-339-3853 facsimile
612-339-3850 cellular

**ATTORNEYS FOR PLAINTIFF
LEE EDWARDS**

**ACKNOWLEDGMENT**

The undersigned attorney does hereby acknowledges the provisions of Minn. Stat. §'549.211.

Dated: July 29, 2011

GOINS LAW OFFICES

Albert T. Goins, Sr., #126159
301 Fourth Avenue South
378 Grain Exchange Building
Minneapolis, MN 55415
(612) 339-3848 telephone
612-339-3853 facsimile

**ATTORNEYS FOR PLAINTIFF**